**IN THE COURT OF APPEALS OF IOWA**

No. 19-0297
Filed April 17, 2019

**IN THE INTEREST OF M.D., K.T., G.A., E.A., and S.A.,**
**Minor Children,**

**K.A., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Ida County, Patrick H. Tott, Judge.

The mother appeals the termination of her parental rights to five children.

**AFFIRMED.**

Robert B. Deck of Deck Law PLC, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Lesley D. Rynell of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

The mother appeals the termination of her parental rights to her five children.[1] The mother's parental rights to the children were initially terminated in May 2018. On further review, our supreme court reversed the termination, finding the mother, who was incarcerated at the time of the initial hearing and participated by phone, was improperly limited to participating in the hearing for only the duration of her testimony. *In re M.D.*, 921 N.W.2d 229, 231 (Iowa 2018). The supreme court remanded the case, requiring the juvenile court to hold the termination hearing anew and allow the mother the opportunity to participate in the entire hearing. *Id.* at 237.

The second termination-of-parental-rights (TPR) hearing was held in February 2019. Afterward, the juvenile court terminated the mother's rights to all five children pursuant to Iowa Code section 232.116(1)(e), (g), and (i) (2018) and applied individual subsections to some children. On appeal, the mother does not challenge the statutory grounds for termination,[2] so we need not address this step. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

---

[1] The mother's parental rights to two older children were terminated in 2006.

[2] In her appellate brief, the mother states that she "disagrees with many findings of fact" and then disputes some of the juvenile court's findings. However, the mother does not explicitly challenge any of the statutory grounds found to support termination, nor does she identify any incorrect legal conclusions made by the juvenile court. Insofar as the mother meant to challenge the statutory grounds for termination under section 232.116(1), we find those arguments waived. *See* Iowa R. App. P. 6.1401—Form 5 (requiring the parent challenging termination to state the legal issues presented for appeal and further providing, "The issue statement should be concise in nature setting forth specific legal question. General conclusions, such as the 'the trial court's ruling is not supported by law or facts' are not acceptable"); *see also In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."); *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments.").

The mother argues for the application of an exception to termination within section 232.116(3) to save the parent-child relationship. *See* Iowa Code § 232.116(3) (providing statutory exceptions the court may apply to save the parent-child relationship even after the grounds for termination have been proved). Specifically, the mother focuses on section 232.116(3)(a), which allows the court to forego termination when a relative has legal custody of the children. The application of the factor is "permissive," not mandatory, and "it is within the sound discretion of the court, based upon the unique circumstances before it and the best interests of the child, whether to apply" it. *P.L.*, 778 N.W.2d at 39 (citation omitted). Additionally, the mother, as the parent resisting termination, bears the burden to establish that the exception should be applied here. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

The mother argues there is no need to terminate her rights now, as she is in prison and cannot be a risk to the children while she is incarcerated. She points out that she may be able to achieve lasting sobriety while in prison[3] and advocates for a "wait and see" approach to termination—arguing termination could be pursued after her release if it remains necessary. We recognize the children are in the custody of their respective fathers, who have the ability to keep the children safe, but the mother's argument fails to take into account the harm the children have suffered because of the long-term, ongoing instability in

---

[3] Between the first and second TPR hearings, the mother pled guilty to two felony drug charges in South Dakota and was sentenced to a term of incarceration not to exceed ten years. The mother's discharge date is in 2027; she becomes parole eligible in August 2021. According to the mother's testimony, it is possible her date for parole eligibility will be moved up, as she is able to earn early discharge credits that affect both her discharge date and her parole-eligibility date.

their lives. *See In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992) ("It is not in the children's best interests to interpret the language of the subsections to prevent termination of the noncustodial parent's rights when the children are placed in the separate home of the other parent."). The oldest child, M.D., who was sixteen at the time of the second TPR hearing, testified in support of the termination of the mother's rights. M.D. was upset at the mother's minimization of how many years the department of human services (DHS) and the juvenile court have been involved in the children's lives, testifying, "[The mother] said she feels like I haven't been in over half my life. From what I remember, like, you guys, DHS, has always been in my life." M.D. expressed a desire to have the chance to live her life without being involved with the juvenile court system. She also expressed concern that her younger siblings were going to get caught in the same cycle of having their parent come in and out of their lives, which she recognized has the ability to affect how they view other relationships as well. In closing, M.D. asked the court to terminate the mother's parental rights, stating:

> I don't feel like [the mother is] capable to take care of me or my sisters and I feel like she keeps getting chances and she keeps ruining them. It's not going to be any different, and I don't want to have to go through that. I don't want my little sisters to have to go through that any more.

The mother advocates waiting until she gets out of prison—sometime between two and a half and eight years from now—to make a determination about her parental rights. But leaving the door open for additional uncertainty in these children's lives is not in their best interests. *See P.L.*, 778 N.W.2d at 38 ("A stable, loving homelife is essential to a child's physical, emotional, and

spiritual well-being." (citation omitted)). We agree with the juvenile court that the permissive factor does not weigh against termination in this case; we affirm.

**AFFIRMED.**